DGE SPRIZZO

JUDGE
V. 12/2005

08 CV 3787

## CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

| PLAINTIFFS JNC INC. | DEFENDANTS DIGITAL WORLD CARD, INC. |
|---|---|

| ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) CROSBY & HIGGINS LLP 350 BROADWAY, NEW YORK, NY 10013 (646) 452-2300 | ATTORNEYS (IF KNOWN) UNKNOWN |
|---|---|

APR 22 2008
U.S.D.C. S.D. N.Y.
CASHIERS

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)

PETITION/MOTION TO CONFIRM ARBITRATION AWARD AND ENTER JUDGMENT.

Has this or a similar case been previously filed in SDNY at any time?  No [x]  Yes? [ ]   Judge Previously Assigned

If yes, was this case  Vol [ ]  Invol. [ ]  Dismissed.  No [ ]  Yes [ ]  If yes, give date _____ & Case No. _____

*(PLACE AN [x] IN ONE BOX ONLY)*       NATURE OF SUIT

### ACTIONS UNDER STATUTES

**TORTS**

**CONTRACT**
- [ ] 110 INSURANCE
- [ ] 120 MARINE
- [ ] 130 MILLER ACT
- [ ] 140 NEGOTIABLE INSTRUMENT
- [x] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
- [ ] 151 MEDICARE ACT
- [ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS)
- [ ] 153 RECOVERY OF OVERPAYMENT OF VETERANS BENEFITS
- [ ] 160 STOCKHOLDERS SUITS
- [ ] 190 OTHER CONTRACT
- [ ] 195 CONTRACT PRODUCT LIABILITY
- [ ] 196 FRANCHISE

**PERSONAL INJURY**
- [ ] 310 AIRPLANE
- [ ] 315 AIRPLANE PRODUCT LIABILITY
- [ ] 320 ASSAULT, LIBEL & SLANDER
- [ ] 330 FEDERAL EMPLOYERS' LIABILITY
- [ ] 340 MARINE
- [ ] 345 MARINE PRODUCT LIABILITY
- [ ] 350 MOTOR VEHICLE
- [ ] 355 MOTOR VEHICLE PRODUCT LIABILITY
- [ ] 360 OTHER PERSONAL INJURY

**PERSONAL INJURY**
- [ ] 362 PERSONAL INJURY - MED MALPRACTICE
- [ ] 365 PERSONAL INJURY PRODUCT LIABILITY
- [ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

**PERSONAL PROPERTY**
- [ ] 370 OTHER FRAUD
- [ ] 371 TRUTH IN LENDING
- [ ] 380 OTHER PERSONAL PROPERTY DAMAGE
- [ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY

**FORFEITURE/PENALTY**
- [ ] 610 AGRICULTURE
- [ ] 620 FOOD & DRUG
- [ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
- [ ] 630 LIQUOR LAWS
- [ ] 640 RR & TRUCK
- [ ] 650 AIRLINE REGS
- [ ] 660 OCCUPATIONAL SAFETY/HEALTH
- [ ] 690 OTHER

**LABOR**
- [ ] 710 FAIR LABOR STANDARDS ACT
- [ ] 720 LABOR/MGMT RELATIONS
- [ ] 730 LABOR/MGMT REPORTING & DISCLOSURE ACT
- [ ] 740 RAILWAY LABOR ACT
- [ ] 790 OTHER LABOR LITIGATION
- [ ] 791 EMPL RET INC SECURITY ACT

**BANKRUPTCY**
- [ ] 422 APPEAL 28 USC 158
- [ ] 423 WITHDRAWAL 28 USC 157

**PROPERTY RIGHTS**
- [ ] 820 COPYRIGHTS
- [ ] 830 PATENT
- [ ] 840 TRADEMARK

**SOCIAL SECURITY**
- [ ] 861 MIA (1395FF)
- [ ] 862 BLACK LUNG (923)
- [ ] 863 DIWC (405(g))
- [ ] 863 DIWW (405(g))
- [ ] 864 SSID TITLE XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 TAXES
- [ ] 871 IRS-THIRD PARTY 20 USC 7609

**OTHER STATUTES**
- [ ] 400 STATE REAPPORTIONMENT
- [ ] 410 ANTITRUST
- [ ] 430 BANKS & BANKING
- [ ] 450 COMMERCE/ICC RATES/ETC
- [ ] 460 DEPORTATION
- [ ] 470 RACKETEER INFLUENCED & CORRUPT ORGANIZATION ACT (RICO)
- [ ] 480 CONSUMER CREDIT
- [ ] 490 CABLE/SATELLITE TV
- [ ] 810 SELECTIVE SERVICE
- [ ] 850 SECURITIES/COMMODITIES/EXCHANGE
- [ ] 875 CUSTOMER CHALLENGE 12 USC 3410
- [ ] 891 AGRICULTURE ACTS
- [ ] 892 ECONOMIC STABILIZATION ACT
- [ ] 893 ENVIRONMENTAL MATTERS
- [ ] 894 ENERGY ALLOCATION ACT
- [ ] 895 FREEDOM OF INFORMATION ACT
- [ ] 900 APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE
- [ ] 950 CONSTITUTIONALITY OF STATE STATUTES
- [ ] 890 OTHER STATUTORY ACTIONS

### ACTIONS UNDER STATUTES

**REAL PROPERTY**
- [ ] 210 LAND CONDEMNATION
- [ ] 220 FORECLOSURE
- [ ] 230 RENT LEASE & EJECTMENT
- [ ] 240 TORTS TO LAND
- [ ] 246 TORT PRODUCT LIABILITY
- [ ] 290 ALL OTHER REAL PROPERTY

**CIVIL RIGHTS**
- [ ] 441 VOTING
- [ ] 442 EMPLOYMENT
- [ ] 443 HOUSING ACCOMMODATIONS
- [ ] 444 WELFARE
- [ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT
- [ ] 446 AMERICANS WITH DISABILITIES -OTHER
- [ ] 440 OTHER CIVIL RIGHTS

**PRISONER PETITIONS**
- [ ] 510 MOTIONS TO VACATE SENTENCE 28 USC 2255
- [ ] 530 HABEAS CORPUS
- [ ] 535 DEATH PENALTY
- [ ] 540 MANDAMUS & OTHER
- [ ] 550 CIVIL RIGHTS
- [ ] 555 PRISON CONDITION

*Check if demanded in complaint:*

CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 83,066.94   OTHER _____

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.? IF SO, STATE:

JUDGE _____   DOCKET NUMBER _____

*Check YES only if demanded in complaint*
JURY DEMAND: [ ] YES [x] NO

NOTE:  Please submit at the time of filing an explanation of why cases are deemed related.

(SEE REVERSE)

ACE AN x IN ONE BOX ONLY)                                    **ORIGIN**

[X] 1 Original      [ ] 2a. Removed from    [ ]3 Remanded from    [ ] 4 Reinstated or    [ ] 5 Transferred from    [ ]6 Multidistrict    [ ] 7 Appeal to District
    Proceeding          State Court           Appellate Court         Reopened            (Specify District)        Litigation            Judge from
                    [ ] 2b. Removed from State Court                                                                                      Magistrate Judge
                        AND at least one party is a pro se litigant                                                                       Judgment

(PLACE AN x IN ONE BOX ONLY)              **BASIS OF JURISDICTION**              **IF DIVERSITY, INDICATE**
[ ] 1 U.S. PLAINTIFF   [ ] 2 U.S. DEFENDANT   [ ] 3 FEDERAL QUESTION   [X] 4 DIVERSITY    **CITIZENSHIP BELOW.**
                                                (U.S. NOT A PARTY)                         **(28 USC 1332, 1441)**

CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)

(Place an [X] in one box for Plaintiff and one box for Defendant)

|  | PTF | DEF |  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ]1 | [ ]1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [X]3 | [ ]3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ]5 | [ ]5 |
| CITIZEN OF ANOTHER STATE | [ ]2 | [ ]2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ]4 | [X]4 | FOREIGN NATION | [ ]6 | [ ]6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

JNC INC.
1-5-6-904 KITAKYUHOJIMACHI,
CHUO-KU, OSAKA,
JAPAN, 541-0057

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

DIGITAL WORLD CARD, INC.
140 BROADWAY
NEW YORK, NY 10005
NEW YORK COUNTY

DEFENDANT(S) ADDRESS UNKNOWN
    REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE
RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

Check one:   THIS ACTION SHOULD BE ASSIGNED TO:    [ ] **WHITE PLAINS**    [X] **FOLEY SQUARE**
             (DO NOT check either box if this a PRISONER PETITION.)

DATE        SIGNATURE OF ATTORNEY OF RECORD            ADMITTED TO PRACTICE IN THIS DISTRICT
4/22/08                                                [ ] NO
RECEIPT #                                              [X] YES (DATE ADMITTED Mo. 5/31___ Yr. 2005 )
                                                       Attorney Bar Code # TH-7920

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____MAG. KATZ_____ is so Designated.

J Michael McMahon, Clerk of Court by _____ Deputy Clerk, DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)

JUDGE SPRIZZO

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Hearing Date:
To Be Scheduled

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JNC INC.

                Petitioner,

         -against-

DIGITAL WORLD CARD, INC.,

                Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No.

PETITION TO CONFIRM
ARBITRATION AWARD

APR 22 2008

U.S.D.C. S.D. N.Y.
CASHIERS

The Petitioner, JNC Inc., by and through its Attorneys, Crosby and Higgins LLP, as and for their Petition, Complaint and Motion, respectfully allege as follows:

## NATURE OF ACTION

1.     Pursuant to the Federal Arbitration Act Section 9 (9 U.S.C. § 9) and CPLR 7510, the Petitioner moves this court for an order confirming the arbitration award issued by Michael Wexelbaum, dated March 12, 2008, and enter a judgment in the amount of $83,066.94 together with future interest against Respondent.

## PARTIES

2.     Petitioner is a foreign corporation maintaining its principal place of business at 1-5-6-904 Kitakyuhojimachi, Chuo-ku, Osaka, Japan, 541-0057.

3.     Respondent is a Delaware Corporation.

4.     Respondent maintains its principal place of business at 140 Broadway, 46th Floor, New York, NY 10005.

5.     Respondent transacts business within the State of New York.

6.     Respondent and Petitioner entered into a written service agreement on or about January 29, 2007 (Process Servicing Agreement annexed hereto as Exhibit A).

7.     Respondent represented in the service agreement that it operates its business at 140 Broadway, 46th Floor, New York, NY 10005.

8.     Respondent designated American Incorporators, Ltd., 1220 North Market Street, Wilmington, DE 19801 as its agent to accept service.

## JURISDICTION

9.  The service contract contains an agreement to arbitrate all disputes with the American Arbitration Association in the state of New York (Exhibit A at ¶ 14.14).

10. The service contract designated the state and/or federal courts for the State of New York to enforce any arbitration award (Exhibit A at ¶ 14.14).

11. There is complete diversity of citizenship between the parties and more than $75,000.00, is at stake in this controversy conferring the court of jurisdiction of this matter pursuant to the provision of 28 U.S.C. § 1332 (a)(1).

12. Venue is proper in the United States District Court for the Southern District of New York since the arbitration agreement is silent as to the court in which actions to enforce arbitration awards should be filed and the arbitration award sought to be confirmed was rendered in New York County. Additionally, the Respondent maintains a principal place of business in New York County.

## FACTS

13. On January 29, 2007, Petitioner entered into a service agreement with Respondent, in which Respondent agreed to provide Petitioner with a number of stored value cards in consideration of certain fees as outlined in the Agreement.

14. The service agreement provided in paragraph 14.14, that any controversies between the parties arising under the agreement would be submitted to binding arbitration.

15. Under this provision of the agreement and the applicable statutory law, this court possesses power to enter a judgment on any award resulting from a final arbitration award. In particular, the agreement provided that any arbitration would be conducted according to the commercial arbitration rules of the American Arbitration Association in the state of New York.

16. A dispute arose between the parties that was subject to the arbitration provision of the service agreement.

17. Petitioner paid Respondent $74,250.00 for goods and services that were never provided by Respondent.

18. Petitioner filed a demand for arbitration with the American Arbitration Association on September 18, 2007 (Arbitration Demand annexed hereto as Exhibit B; Statement of Claim annexed hereto as Exhibit C).

19.   The demand for arbitration was received by the American Arbitration Association on September 18, 2007.

20.   The demand for arbitration listed the Respondent's address as Digital World Card, Inc., 140 Broadway, 46th Floor, New York, NY 10005.

21.   The American Arbitration Association administered the case through its International Centre for Dispute Resolution Division.

22.   The American Arbitration Association notified the respondent of the pending arbitration claim against it.

23.   Respondent failed to appear in the arbitration proceeding after having been given due notice of the pendency of the action by certified/return receipt requested mail.

24.   On March 12, 2008, Arbitrator Michael Wexelbaum, entered an award in favor of Petitioner in the amount of $74,250.00 plus simple interest at the rate of 9% per annum computed from May 2, 2007 to the date of payment in full thereof by Respondent, as well as reimbursement by Respondent to Petitioner for the sum of $2,450.00 in tribunal costs and administrative expenses (Award annexed hereto as Exhibit D).

25.   The total amount of the award is $83,066.94:

| | |
|---|---|
| Award | $74,250.00 |
| Interest 5/20/7-4/15/08 | $6,366.94 |
| Costs & Fees | $2,450.00 |
| **Total:** | **$83,066.94** |

26.   The arbitration award has not been vacated or modified.

27.   Respondent has subsequently failed to voluntarily satisfy the arbitration award.

28.   More than thirty days have elapsed since the issuance of the award.

29.   This petition to confirm the award is authorized by the terms of the arbitration agreement, Section 9 of the Federal Arbitration Act, CPLR 7510 and the award itself.

30.   A judgment on the arbitration award is needed to permit the Petitioner to enforce it.

31.   Upon confirmation of the award, the Petitioner requests that this court enter a judgment in the amount of $83,066.94, together with future interest accruing on the unpaid principal amount of the award at 9% straight interest per annum from April 15, 2008 through the satisfaction of the award.

32.   A confirmation proceeding under 9 U.S.C. § 9 is intended to be a summary proceeding; therefore, confirmation can only be denied if an award has been corrected, vacated, or modified in accordance with the Federal Arbitration Act.

33.   Section 9 of the Federal Arbitration Act provides that a petition to confirm an arbitration award must be served pursuant to the court rules governing the service of a motion.

34.   Pursuant to Local Rule 5.3, Petitioner intends to serve Digital World Card, Inc. at 140 Broadway, 46th Floor, New York, NY 10005 via overnight delivery service. Additionally, Petitioner intends to serve Digital World Card, Inc. c/o American Incorporators, Ltd., 1220 North Market Street, Wilmington, DE 19801 via overnight delivery service.

35.   Petitioner requests that the court schedule an expedited hearing and/or return date on the petition.

36.   **No prior application has been made for the relief requested herein.**

WHEREFORE, the Petitioner respectfully requests an order:

a.   setting a hearing date for consideration of the instant petition; and/or

b.   confirming the arbitration award by Arbitrator Michael Wexelbaum dated March 12, 2008; and/or

c.   entering a judgment in the amount of $83,066.94 against the Respondent; and/or

d.   granting the Petitioner its costs in bringing this action; and/or

e.   for such other and further relief as this court may deem just, proper and equitable.

Dated: New York, New York
       April 22, 2008

Todd A. Higgins, Esq. (TH 7920)
CROSBY & HIGGINS LLP
350 Broadway, Suite 300
New York, NY 10013
Tel: (646) 452-2300
Fax: (646) 452-2301
thiggins@crosbyhiggins.com
*Attorneys for Petitioner*

# Exhibit A

## STORED VALUE CARD ISSUING / PROCESSING SERVICE AGREEMENT

THIS SERVICE AGREEMENT (this "Agreement") is entered into by and between Digital World Card Inc., 140 Broadway, 46th Floor, New York, NY 10005 ("**DWC**") and Gold International, Inc., 22 Cayon Street, Basseterre, St. Kitts & Nevis ("**COMPANY**") as of January 29th, 2007 (the "Effective Date").

COMPANY in association with Japan's business corporation, JNC CARD INC in Japan ("**JNC**" or "**JNC INC**") would like DWC to provide a private brand's reloadable stored value card with AMEX / DINERS / MasterCard / VISA / JCB brand with Gold / Platinum status for COMPANY or JNC's customers and with the specification and requirements stipulated in this agreement ("**Agreement**").

1. <u>Service.</u>

1.1    DWC will provide COMPANY with private label reloadable (multiple use) pre-paid debit card / stored value card / gift card products ("**JNC Card**" or "**JNC Secured Credit Card**") inclusive of data output to web, connectivity to First Data, Star Network, MasterCard, American Express, Diners Club International and Visa, JCB and as fulfillment of services to COMPANY, JNC INC and JNC Card's international customers ("**Cardholder**"). DWC will contract a sponsor bank and/or each credit card company for issuance of MasterCard, VISA, Amex, Diners and JCB brand products with Gold/Platinum status. DWC will provide COMPANY with daily transaction batch data and real time balance or transaction data of each Cardholder by secure data transfer method.

1.2    DWC will provide JNC CARD with COMPANY's requirements and specifications as stipulated below.

1.2.1    JNC CARD with Amex, MasterCard, VISA and JBC brand can be issued with Gold and Platinum Status from each credit card company's benefit offer. JNC Diners Club Card's benefits must be the same benefits offered by Diners Club International.

1.2.2 JNC CARD can be issued to residents worldwide including Japan and other Asian countries such as South Korea, or China. Cardholder's age must be 15 years or over, in case JNC gives certain amount of credit. If it is simple prepaid, debit or gift card, there is no age restriction.

1.2.3 Required personal identification document to apply for JNC Card can be submitted in any local language. No translation into English is required. Scanned copy is acceptable.

1.2.4 DWC clearly understands that JNC CARD will be offered as JNC Secure Credit Card to JNC's customers and JNC may give certain credit to each Cardholder at JNC's own discretion and risk, as long as the funds are guaranteed by advance deposit at the sponsor bank(s) ("**Bank**") or within the credit limit to which the sponsor bank has agreed.

1.2.5    Settlement currency is in USD. EUR or Japanese YEN will be optional in the future.

1.2.6    Maximum issuing quantity of JNC CARD is not limited.

1.2.7   Design of JNC CARD is similar to a credit card company's original card with a small JNC Card label. A sample design is attached as Appendix C.

1.2.8   VISA logo must not be VISA Electron. MasterCard logo must not be Maestro.

1.2.9   All fees and costs including setup fees and transaction fees are specified and agreed to in Section 2 of this Agreement. DWC guarantees no extra fees or costs to COMPANY or Cardholders.

1.2.10  COMPANY or JNC will deposit the funds for all Cardholders' prepaid balance at the sponsor's bank under COMPANY's, JNC's or its local subsidiary's name where the Bank is located and the Bank will automatically and daily withdraw the amount spent by all Cardholders from its bank account. DWC's fee will also be automatically withdrawn from this bank account. DWC must inform COMPANY location and name of the Bank upon execution of this Agreement.

1.2.11  COMPANY or JNC can reload the funds daily to each card within the total balance deposited at the bank by sending batch data from any location.

1.2.12  Within the limit of each card's balance, the maximum amount of each transaction, daily transaction total, monthly transaction total on each JNC Card can be decided and set by COMPANY or JNC and may not be restricted by DWC, the Bank or Card Companies.

1.2.13  Daily transaction raw data including actual local amount purchased can be securely downloaded by batch from Japan or worldwide by COMPANY or JNC. Technical detail will be discussed as soon as the Agreement is signed.

1.2.14  Expiry date and/or deactivation of each JNC Card can be determined by COMPANY.

1.3     DWC will first prepare and charge COMPANY for a minimum 2,500 JNC Cards in total to be distributed among JNC Card's Cardholders including Japanese residents. PIN based stored value debit card is to be used by Cardholder at a fair market rate. DWC will charge actual shipping and handling fees incurred. The services provided by DWC shall be performed in a professional, timely manner, and shall meet deadlines mutually established by COMPANY and DWC.

1.4     DWC will first provide JNC Card with American Express and MasterCard brand, and then, Diners Club for Individual program, Issuing/Sponsor banks, processing solutions. After the above three brands are completed, JCB and VISA will follow, as requested by COMPANY. In case DINERS is delayed because of DINERS CLUB Inc's preparation, DWC will proceed with VISA or JCB at COMPANY's discretion instead of DINERS.


## 2.    Fees and Costs

2.1     **Set up fee:** A non-refundable DWC set up cost of $9,800.00 per brand for the payment system applies and must be paid to DWC at the time of commencement of this agreement. Bin Extension revised pricing of Cardholder fees by COMPANY's request requires an additional set up Fee of $8,500.00 per program. In addition, as initial setup cost, each card company's license fees below apply. These fees must be paid before each program is ready.

| Set Up Fees | AMEX | DINERS | MC | VISA | JCB |
|---|---|---|---|---|---|
| DWC set up | $9,800 | $9,800 | $9,800 | $9,800 | $9,800 |
| Cirrus/Plus Gateway | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 |
| Card Company's BIN | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 |
| Star BIN | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 |
| Bank Sponsor Fee | $2,500 | $2,500 | $2,500 | $2,500 | $2,500 |
| Card Company License Fee | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 |
| Total | $29,800 | $29,800 | $29,800 | $29,800 | $29,800 |

2.2    **Initial card supply:**  Initially, a minimum combined total of 2,500 JNC Cards, with artwork for the front and back of the card to be supplied by COMPANY and to be approved by DWC, will be supplied by DWC at a cost of $2.95 per card ($7,375 in total for 2500). This should be paid after the actual card's artwork is approved.

2.3    **Cardholder's Transaction Fee:**  Transaction Fee will be applied to each transaction and card activation. Detailed fee schedule is provided by Appendix A. Transaction fees may change by negotiation between DWC and COMPANY after six months result.  Transaction Fees will be paid with each transaction.  50% of Transaction Fees, exceeding $2,500 of Monthly minimum service fee in 2.4, will be returned to COMPANY at the beginning of the next month.

2.4    **Monthly Minimum Ongoing Services Fee:**  Minimum Service Fee of $2500 per month apply until the program begins to generate a minimum Cardholders transaction fees' total revenue of $2,500 per month (including transactions of all card brands), After Amex, VISA and MasterCard's initial set up are completed and these programs are ready to "Go Live".

2.5    **Skeleton record fees:**  Skeleton record fees for account creation and for digital account inventory are to be billed at 0.10 per account per month.

2.6    Additional customization, only if needed and must be accepted by COMPANY in advance, working with a card association's personnel to develop program and consulting fee for the extra explanations of working systems and discovery of assembly of technologies to COMPANY, if agreed by COMPANY, may be billed at a rate of $175.00 per hour but maximum of $2,500 per month until the program is ready to "Go Live".

2.7    **Benefit, Insurance, etc:** Benefits of each card company and/or Regular/Gold/Platinum may require separate fees/rates. DWC must provide all rate information for these benefits.

2.8    All fees and costs including setup fees and transaction fees are specified and agreed to in this Section 2 and DWC guarantees no additional fees or costs to COMPANY, JNC INC or Cardholder.

3.    **Verification of Data**

3.1 COMPANY agrees that by submitting each payment:

3.1.1 COMPANY has approved all Payments information

3.1.2 COMPANY has waived and released any claim against DWC arising out of any errors in the Payments information which COMPANY has not itself corrected or has not requested DWC to correct.

3.1.3 Any subsequent request for corrections will be considered special handling and additional fees may be charged.

3.1.4 Final audit rests with COMPANY. DWC will not have any responsibility for verifying the accuracy of submitted data. COMPANY provides command interface through SKYPE or directly inputs via the Internet or any other electronic method.

3.2 COMPANY must be compliant with KYC (Know Your Customer) and AML (Anti Money Laundering) Rules attached to this Agreement by Appendix B.

3.3 COMPANY must acquire Cardholder information and verify, Name, Address, Date of Birth, Domestic identification number (Social Security Number, Drivers License Number, Student Number, Passport Number, etc.).

3.4 DWC will contract with a sponsor bank and/or each credit card company for the purpose of licensing and usage of each card company's network. COMPANY, JNC INC or its local corporation and Bank may enter a separate bank sponsor agreement to engage the role of bank sponsor and may retain the depository of an entire issuing program, or aggregate programs for the purposes of earning income in the stored value industry. The primary role of the sponsoring bank is to manage the "PFA" (Pooled Funds Account or accounts). Additionally, the sponsor bank may negotiate with COMPANY to earn a portion of the processing fees to the card portfolio to be determined in a separate bank sponsor agreement. JNC will issue own credit to each customer within the deposit balance at the JNC or COMPANY's bank account ("DDA", Direct Deposit Account).

4.    **Security Procedure**

4.1 COMPANY's Payments in house department will approve and submit the Payments information thereby authorizing DWC to create and transmit credit or debit entries ("Entries") to Cardholders necessary to process COMPANY's payments.

4.2 Payments will be authorized by security-cleared individuals in back office working with staff at DWC through instant messaging systems. The following functions will be supported in real time and will be cleared each day.

4.2.1   Real time balance verification and PIN override.

4.2.2  Real time Debit to Cardholders cards for purchases and transfer to COMPANY's merchant accounts.

4.2.3  Clearance of Merchant account daily via ACH less $1000.00 float to JNC or COMPANY's DDA of preference.

4.3  Automatic Bill Pay system shall be set up to provide COMPANY the ability to credit a card account or accept a payment to a card account in real time and to clear each day to COMPANY's DDA account of preference.

4.4  Card Loading capabilities via Web back office and via POS devices as specified by DWC.

4.5  Distributors of the JNC Card (sales agents) may transfer funds from Card to Card via the Internet or IVR.

4.6  DWC's system supports full Spanish and English customer service.

4.7  DWC requires COMPANY Bank DDA information and authorization to EFT to this account.

4.8  DWC requires a form to be completed by all Cardholders' name, address and telephone number(s), including one piece of identification photographed via computer camera or scanner (in jpg, png or pdf file format) or a clear legible photo copy of the Cardholders Identification. (KYC Rule)

4.9  Project manager will be Kazuo Yatuda of COMPANY with co-ordination by DWC card services staff.

## 5.  Funding

5.1  COMPANY will have no right to cancel or amend any Payments information received by DWC after it has been approved by COMPANY's Payments Department and submitted to DWC.  There will be no recourse after adjustments are made. DWC may use reasonable efforts to act prior to processing the Entries, but will have no liability if the cancellation or amendment is not effected. COMPANY will reimburse DWC for any expenses, losses or damages DWC may incur affecting or attempting to affect COMPANY's request.

5.2  Except for Entries created from Payments information that has been re-approved by DWC and resubmitted by COMPANY in accordance with the requirements of this Agreement, DWC will have no obligation to retransmit a returned Entry if DWC compiled with the terms of this Agreement with respect to the original Entry.

5.3  DWC will process the Payments information and Entries created on forms provided to COMPANY.

5.3.1  COMPANY deposit funds to DDA account at the Bank specified at the depository card institution and the funds must be received at DDA no later than one business day prior to funding date.  COMPANY will deposit amounts as necessary to
a) fund JNC Card's direct deposits or PFA
b) pay any fees or charges associated with the Service, including but not limited to finance charges

c) pay any debit, correcting or reversing entry initiated pursuant to this Agreement which is later returned to COMPANY

d) pay any other amount that becomes owed under this agreement.

If DWC does not receive sufficient funds as specified in this clause, later than one business day prior to funding date, DWC will not be responsible for failure to process the Payments information on funding date.

5.3.2   Payments/Funding information must be approved by COMPANY and received by DWC no later than one business day prior to funding date. If DWC receives approved Payments/Funding information later than one business day prior to funding date, DWC will not be responsible for failure to process the Payments information on funding date. If any of the requirements of this subsection are not met, DWC will use reasonable efforts to process the Payments Information on the next business day.

5.3.3   If COMPANY requests, DWC will make a reasonable effort to reverse an entry, but will have no responsibility for the failure of any other person or entity to honor COMPANY's request.

5.3.4   COMPANY acknowledges that under the Rules, DWC makes certain warranties with respect to each Entry. DWC agrees to reimburse COMPANY for any loss COMPANY incurs, including its reasonable attorney's fees and legal expenses, as the result of a breach of a warrant made by DWC unless the breach resulted solely from COMPANY's negligence or intentional misconduct.

## 6.   Termination and Renewal

6.1  **Option to Renew:** This Agreement will automatically renew for successive additional one-year terms upon the end of each term. Either party must give the other party forty-five (45) days' notice if it does not intend to renew the Agreement.

6.2  **Termination During First Year:** Neither party may terminate this Agreement during the first year unless a) it becomes impossible for a party to perform under the contract; b) the contract is deemed illegal or against public policy; c) the contract is deemed void or voidable by a court of competent jurisdiction; or d) the other party is in breach of the Agreement. In the event of breach, the Agreement is subject to the termination provisions set forth in Section 6.

6.3  **Termination:** After the Initial Term either party may terminate this Agreement at any time, for any reason, upon giving the other party 45 days written notice of said termination.

## 7.   Breach

7.1  **Breach by DWC or COMPANY**  In the event of a breach of this Agreement, the non-breaching party shall notify the other party in writing of said breach. The breaching party shall have thirty (30) days from such notification to emend such breach. Failure to emend

shall constitute a default of this Agreement, entitling the non-breaching party to immediately terminate the Agreement.

8.    **Best Efforts**

8.1  Both Parties agree to use their best efforts to perform the services pursuant to this Agreement.

9.    **Post-Termination Compensation**

9.1  In the event that this Agreement is terminated, COMPANY shall be entitled to post-termination compensation according to the terms set forth in Appendix A. COMPANY shall be entitled to such post-termination compensation for as long as DWC receives revenues from services performed by COMPANY under this Agreement. In the event that this Agreement is terminated for COMPANY's breach, DWC may withhold only those sums which DWC believes is necessary to remedy the breach. If any sums are withheld to offset damage resulting from breach, DWC shall provide an accounting of all sums to be withheld within sixty (60) days of termination of this Agreement, provided DWC is able to fully assess the damage resulting from said breach within that time period. Nothing in this Section shall be construed as limiting DWC's legal rights against COMPANY as a result of breach. Moreover, notwithstanding the provisions of this Section, in the event that this Agreement is terminated for breach arising from fraud, negligence or dishonesty of COMPANY, COMPANY shall not be entitled to any post-termination compensation.

10.   **Confidentiality; Restrictive Covenants**

10.1  Confidentiality.  Both parties recognize and acknowledge that the other party possesses certain confidential information that constitutes a valuable, special, and unique asset. As used herein, the term "confidential information" includes all information and materials belonging to, used by, or in the possession of the party relating to its products, processes, services, technology, inventions, patents, ideas, contracts, Card information, developments, business strategies, pricing, current and prospective customers, marketing plans, and trade secrets of every kind and character, but shall not include i) information that was in the receiving party's possession at the time of disclosure as shown by its files and records immediately prior to the time of disclosure, (ii) is independently developed by the receiving party as shown by its files and records, (iii) is rightfully acquired by the receiving party from a third party having the right to disclose such information, or (iv) is or becomes publicly available through no breach by the receiving party or any of its employees of this Agreement. The receiving party shall bear the burden of proving that any information provided to it is not confidential information.

10.2  COMPANY agrees that all of the confidential information of DWC to which COMPANY is exposed during the course of this Agreement is and shall continue to be the exclusive property of the DWC, whether or not prepared in whole or in part by COMPANY and

whether or not disclosed to or entrusted to COMPANY's custody. COMPANY agrees that COMPANY shall not, at any time following the execution of this Agreement, use or disclose in any manner any confidential information of DWC. Upon termination of this contract, COMPANY shall deliver to DWC all confidential materials, documents and things in its possession, or subsequently coming into its possession, pertaining to the business of DWC, including, without limitation, computer hardware and software, manuals, notebooks, Card statements, business plans, reports, novelties, promotional literature, labels, equipment, office supplies and any other confidential or proprietary materials supplied by and belonging to DWC.

10.3    DWC agrees that all of the confidential information of COMPANY to which DWC is exposed during the course of this Agreement is and shall continue to be the exclusive property of the COMPANY, whether or not disclosed to or entrusted to DWC's custody. DWC agrees that DWC shall not, at any time following the execution of this Agreement, use or disclose in any manner any confidential information of the COMPANY.

10.4    During the course of the parties' relationship pursuant to this Agreement, COMPANY may acquire knowledge of, or have contact with, DWC's dealers, employees, and distributors. COMPANY may not contact, solicit for employment, or do business with any such dealers, employees, or distributors during the course of this Agreement or for a period of two (2) years following termination of this Agreement without the express written consent of DWC unless this Agreement is terminated for breach..

10.5    During the course of the parties' relationship pursuant to this Agreement, DWC may acquire knowledge of, or have contact with, COMPANY's resellers, employees, and distributors. DWC may not contact, solicit for employment, or do business with any such resellers, employees, and distributors during the course of this Agreement or for a period of two (2) years following termination of this Agreement without the consent of COMPANY unless this Agreement is terminated for breach.

10.6    All Confidential Information in whatever form, including any copies, shall be regarded hereunder as the property of the disclosing party and/or third parties which have entrusted Confidential Information to the disclosing party and shall remain so at all times. All copyrights in any Confidential Information are hereby reserved by the disclosing party and/or such third parties. Neither this Agreement nor the disclosure of Confidential Information grants any rights to the receiving party under any patent, copyright, or any other intellectual property right, nor shall this Agreement grant the receiving party any rights in or to Confidential Information, except the limited right to review such Confidential Information solely for the purpose stated above. This Agreement does not require the disclosing party to disclose any Confidential Information. All Confidential Information disclosed is provided "AS IS," without any warranty, whether express or implied, as to its accuracy or completeness for any purpose, or with respect to any other matter. The disclosing party will not be liable for any damages arising out of use of the Confidential Information, and the use of Confidential Information is at the receiving party's own risk.

10.7 Both parties agree that the obligations to which they are bound under this Section 10 are necessary and reasonable in order to protect each party and its business, and both parties expressly agrees that monetary damages would be inadequate to compensate for any breach by the receiving party or any of its officers, agents, or employees of the covenants and agreements set forth herein. Accordingly, each party agrees and acknowledges that any such violation or threatened violation shall cause irreparable injury to the other and that, in addition to any other remedies that may be available in law, equity or otherwise, the disclosing party shall be entitled to obtain injunctive relief against the threatened breach of this Agreement or the continuation of any such breach without the necessity of proving actual damages.

10.8 This Section 10 shall apply to DWC, COMPANY, and all affiliates, agents, distributors, resellers, subsidiaries and other entities related to DWC and COMPANY, respectively, as well as employees of the same.

## 11.    Representations and Warranties of DWC

11.1 **Functionality of Product:** DWC warrants that the cards are usable as Stored Value Debit cards on STAR, Global ATM networks and Amex, Diners, MasterCard or VISA, JCB where available.

11.2 **Disclaimers:** Nothing in this Agreement is or shall be construed as:

11.2.1 A warranty or representation by DWC as to the validity or scope of any licensed rights;

11.2.2 A warranty or representation that anything made, used, sold or otherwise disposed of under this Agreement is or will be free from infringement of patents, copyrights, trademarks or other rights of third parties;

11.3 No Warranties of Merchantability or Fitness for Use
EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, DWC MAKES NO REPRESENTATION AND EXTENDS NO WARRANTIES OF ANY KIND, EITHER EXPRESS OR IMPLIED, OR ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

## 12.    Limitation of Liability

12.1 WITHSTANDING ANYTHING TO THE CONTRARY, NEITHER PARTY SHALL BE LIABLE TO THE OTHER WITH RESPECT TO ANY SUBJECT MATTER OF THIS AGREEMENT UNDER ANY CONTRACT, NEGLIGENCE, STRICT LIABILITY OR OTHER LEGAL OR EQUITABLE THEORY FOR (i) ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES; OR (ii) COST OF PROCUREMENT OF SUBSTITUTE GOODS, TECHNOLOGY OR SERVICES. THIS LIMITATION WILL APPLY NOTWITHSTANDING ANY FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED

REMEDY PROVIDED HEREIN. NOTHING IN THIS AGREEMENT SHOULD BE CONSTRUED AS LIMITING LIABILITY FOR CONDUCT THAT WAS KNOWINGLY FRAUDULENT OR DELIBERATELY DISHONEST OR THAT CONSTITUTED WILLFUL MISCONDUCT.

**13.    Indemnification.**

13.1    Either party agrees to indemnify, hold harmless, and defend the other party, its directors, officers, agents, employees and/or representatives from and against and all claims, demands, causes of action, losses, expensed or liabilities, including reasonable attorney's fees, on account of injury or death of any person or loss of or damage to any and all tangible or intangible property, including but not limited to claims for infringement of patent, copyright, trademark, service mark, licensing agreement, or trade secret, claims for liable, slander, invasion or privacy, arising, directly or indirectly, out of or omissions of either party, any subcontractor, director, officer, agent, employee and/or representative of each of them, in the performance of any work under this Agreement, to the extent such cause of action, loss, expense or liability is caused by the sole action, inaction or negligence of the respective party.

**14.    Miscellaneous**

14.1    **Attorneys' Fees.**  Should either party hereto, or any heir, personal representative, successor or assign of either party hereto, resort to legal proceedings in connection with this Agreement, the party or parties prevailing in such legal proceedings shall be entitled, in addition to such other relief as may be granted, to recover its or their reasonable attorneys' fees and costs in such legal proceedings from the non-prevailing party or parties.

14.2    **Governing Law.**  This Agreement shall be governed by and construed in accordance with the laws of New York State without regard to conflict of law principles.

14.3    **Entire Agreement.**  This Agreement contains the entire agreement and understanding between the parties hereto and supersedes any prior or contemporaneous written or oral agreements, representations and warranties between them respecting the subject matter hereof. This Agreement shall take precedence over any other documents that may conflict with this Agreement.

14.4    **Amendment.**  This Agreement may be amended only by a writing signed by DWC and COMPANY.

14.5    **Severability.**  If any term, provision, covenant or condition of this Agreement, or the application thereof to any person, place or circumstance, shall be held to be invalid, unenforceable or void, the remainder of this Agreement and such term, provision, covenant or condition as applied to other persons, places and circumstances shall remain in full force and effect.

14.6   **Construction.**   The headings and captions of this Agreement are provided for convenience only and are intended to have no effect in construing or interpreting this Agreement. The language in all parts of this Agreement shall be in all cases construed according to its fair meaning and not strictly for or against either party.

14.7   **Rights Cumulative.**   The rights and remedies provided by this Agreement are cumulative, and the exercise of any right or remedy by either party hereto (or by its successor), whether pursuant to this Agreement, to any other agreement, or to law, shall not preclude or waive its right to exercise any or all other rights and remedies.

14.8   **Nonwaiver.**   No failure or neglect of either party hereto in any instance to exercise any right, power or privilege hereunder or under law shall constitute a waiver of any other right, power or privilege or of the same right, power or privilege in any other instance. All waivers by either party hereto must be contained in a written instrument signed by the party to be charged.

14.9   **Remedy for Breach.**   The parties hereto agree that, in the event of breach or threatened breach of any covenants of either party, the damage or imminent damage to the value and the goodwill of the other Party's business shall be inestimable, and that therefore any remedy at law or in damages shall be inadequate. Accordingly, the parties hereto agree that either Party shall be entitled to injunctive relief against the other Party in the event of any breach or threatened breach of any of such provisions by the other Party, in addition to any other relief (including damages) available to the damaged Party under this Agreement or under law.

14.10  **Notices.**   Any notice (other than the Request for Consent) provided in this Agreement must be in writing and, unless otherwise specified herein, will be considered as given on the day it is delivered by hand or deposited in the U.S. mail, postage prepaid, addressed to the person to whom the notice is to be given at the address shown above or at such other addresses as any party may designate to the other in writing.

     Digital World Card Inc, 140 Broadway, 46th Floor, New York, NY 10005
     Ph: 1 866 878 8020 EXT 106 / Fax: 1 877.734.1313
     E-Mail: cardservice@digitalwaorldcard.com

     Email and Fax notice can also be regarded valid as long as receipt of proof such as Fax Sending Receipt or Email Receipt notification is obtained.

14.11  **Assignability.  Successors.** Neither party may assign, pledge or encumber its interest in this Agreement or any part thereof and may not delegate its duties hereunder without express consent from the other party, which consent shall not be unreasonably withheld. The provisions of the Agreement shall be binding on and shall inure to the benefit of the parties hereto, their heirs, assigns, and successors.

14.12  **Assistance.**   COMPANY shall, during and after termination of services rendered, upon reasonable notice, furnish such information and proper assistance to DWC as may reasonably be required by DWC in connection with work performed by COMPANY.

14.13  **Force Majeure.**  If either party's performance of this Agreement or any obligation hereunder is prevented, restricted or interfered with by causes beyond its reasonable control including, but not limited to, acts of God, fire, explosion, vandalism, storm or other similar occurrence, any law, order, regulation, direction, action or request of the parties' respective governments, or of any agency, commission, court, bureau, corporation or other instrumentality of any one or more such governments, or of any civil or military authority, by national emergency, insurrection, riot, war, strike, lockout or work stoppage or other labor difficulties, or supplier failure, shortage, breach or delay, then that party shall be excused from such performance on a day-to-day basis to the extent of such restriction or interference. That party shall use reasonable force efforts under the circumstances to avoid or remove such causes of nonperformance and shall proceed to perform with reasonable dispatch whenever such cases are removed or ceased.

14.14  **Arbitration.**  The parties agree that any disagreement or controversy arising between them relating to this Agreement that cannot be settled by negotiation shall be resolved by binding arbitration. Such arbitration shall be conducted according to the commercial arbitration rules then in effect of the American Arbitration Association in the State of New York. State and federal courts for the State of New York, shall have jurisdiction over any action or proceeding to enforce any award of the arbitrator in any such proceeding. This agreement to arbitrate shall be binding upon all parties. Any award the arbitrator makes shall be final and binding on the parties and judgment on it may be entered in any court of competent jurisdiction.

14.15  **Understanding of Agreement.**  Both parties acknowledge that they have thoroughly read this Agreement and have had the opportunity to ask questions or consult with any attorney with respect to any portions of the Agreement.


IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.


DIGITAL WORLD CARD, INC.                    GOLD



By:                                         By:


Title: President                            Title:

140 Broadway, 46th Floor

Digital World Card Payments Agreement          - 12 -                    Version 1/29/2007
Initials: DWC _____   COMPANY _____

22 Cayon Blvd, Basseterre

New York, NY 10005                St. Kitts & Nevis

# Exhibit B

**Online Filing Demand For Arbitration/Mediation Form**

**This concludes your filing.**

**Thank you for submitting your claim to the AAA.**

**Your claim confirmation number is: 002-BOA-LC5**

To institute proceedings, please send a copy of this form and the Arbitration Agreement to the opposing party.

**Your dispute has been filed in accordance with:** International Arbitration Rules
      **This Claim has Been Filed For:**    Arbitration
               **Filing Fee:**    ¤ 950.00

Additional Claim Information

      **Claim Amount:**    ¤ 74,250.00

      **Claim Description:**    See uploaded document No hearing is wanted as travel expenses would be expensive. Please decide the Award by documents only.

      **Arbitration Clause:**    14.14 Arbitration. The parties agree that any disagreement or controversy arising between them relating to this Agreement that cannot be settled by negotiation shall be resolved by binding arbitration. Such arbitration shall be conducted according to the commercial arbitration rules then in effect of the American Arbitration Association in the State of New York. State and federal courts for the State of New York, shall have jurisdiction over any action or proceeding to enforce any award of the arbitrator in any such proceeding. This agreement to arbitrate shall be binding upon all parties. Any award the arbitrator makes shall be final and binding on the parties and judgment on it may be entered in any court of competent jurisdiction.

**Hearing Locale Requested:** N/A , MI
      **Contract Date:**    01/29/2007
    **Number of Neutrals:**    1

| Claimant | Representatives |
|---|---|
| **JNC INC** | |

Type of Business: Service / Product Provider

| | | | | | |
|---|---|---|---|---|---|
| **Name:** | Kozo Noma | | **Name:** | Kazu Yamazaki |
| **Company Name:** | JNC INC | | **Company Name:** | Gold International Inc. |
| **Address:** | 1-5-6-904 Kitakyuhojimachi Chuo-ku, Osaka Japan 541-0057 | | **Address:** | P.O. Box 281 22 Cayon Street Basseterre NA Saint Kitts and Nevis |
| **Tel#:** | 81661251177 | | **Tel#:** | 7029249763 |
| **Fax#:** | 81661251188 | | **Fax#:** | 7029249763 |
| **Email:** | jncinc@jncgroup.net | | **Email:** | yamazaki@goldint.com |
| **Include in Caption:** | Company | | | |

| Respondent | Representatives |
|---|---|
| **Digital World Card Inc.** | |

Type of Business: Service / Product Provider

| | |
|---|---|
| **Name:** | Joe Lacroix |
| **Company Name:** | Digital World Card Inc. |
| **Address:** | 140 Broadway, 46th Floor New York, NY 10005 |
| **Tel#:** | 866-878-8020 |
| **Fax#:** | 877-734-1313 |
| **Email:** | joe.lacroix@digitalworldcard.com |
| **Include in Caption:** | Company |

To institute proceedings, please send a copy of this form and the Arbitration Agreement to the opposing party.

Your demand/submission for arbitration/mediation has been received on 09/18/2007 20:09.

# Exhibit C

## Statement of Claim

(1) Claimant's Request of Arbitration and Demand of Award

1.   Respondent must immediately return $74,250 to Claimant.

(2) Brief Description of the Claim

In January 29th, 2007, Gold International Inc in St.Kitts who is representative of JNC Inc. in Japan (GOLD/JNC, Claimant) and Digital World Card Inc (DWC, Respondent) signed the Agreement (Exhibit 1) that Respondent provides Claimant with Stored Value Card (JNC CARD) with VISA / MasterCard / Amex / Diners Club and with Gold / Platinum status, as specified in the Agreement.

Claimant paid $74,250 in total (Exhibit 2) but Respondent failed to provide JNC for seven months.   Respondent refused to talk, after number of Claimant's demands to provide JNC CARD, to explain the problem to Claimant, or even many requests for discussion to solve the problem.

Finally and officially, Claimant requested Correction of Breach of Contract (Exhibit 3) on August 30th, 2007. Then Respondent returned Cancellation Notice (Exhibit 4) on August 31st, 2007 (it is dated Aug 30 but was actually received on Aug 31) to cancel the agreement without any lawful basis.

Therefore, Claimant now demands for full reimbursement of $74,250.
If Respondent ignores this arbitration request or the decision of the arbitrator(s), Claimant shall reserve the right to claim at the Court further a part or whole of damage/loss including costs, for which Claimant actually paid to an advertising company and/or system development, in addition to this $74,250.

(3) Facts with No Dispute

1.   The Agreement was executed on January 29, 2007.
2.   Claimant has paid $74,250 in total to Respondent.
3.   Respondent did not issue any JNC CARD at all.

(4) Supporting Comments from Claimant

1.   The first payment of $29,400 ($9,800 x three brands) was stated as non-refundable set up fee in the Agreement. If Claimant canceled the Agreement, non-refundable clause may apply, however, Respondent could not provide JNC CARD and simply canceled it. Therefore, all funds should be returned to Claimant.   In addition, Claimant just found out that VISA/MC does not allow direct promotion or retail distribution of their prepaid card (stored value card) to international customers (for example, to Japanese residents) except for already

existing members of different business service and that Gold/Platinum status/color/design is not approved for international prepaid card. It was impossible for Respondent to provide the service from the beginning but Respondent executed the Agreement and received the funds. It could almost be considered as fraud. In any case, clearly no payment was consultant fee either.

2.  The second payment of $44,850 for the invoice (Exhibit 5) from Respondent clearly states that it was for payment to First Data, First Bank of Delaware and VISA/MC to issue JNC CARD for Claimant but Respondent took the money and never paid to these companies.

3.  During these seven months, Claimant had accepted many changes such as No Diners Club Stored value card could be issued, No American Express Stored Value Card with Gold/Platinum design could be issued and other various new requests/changes.    However, when Respondent additionally requested immediate monthly payment of $5,000 as bank fee, even before nothing had been approved yet, AND immediately after Claimant informed Respondent of providing additionally requested corporate documents (which was also suddenly asked in mid-August), Claimant realized Respondent was trying to add new conditions more and more and to make Claimant given up. Claimant finally decided to send official Notice of Correction of Breach of the Contract and asked again to discuss to solve the problem.
Respondent refused to explain about this $5,000 bank fee and also refused any discussion to find any possible solutions.

4.  Respondent would probably claim that cancellation was due to Claimant's failure to provide requested documents. It does not make any excuse as follows:
  First, Claimant was in fact preparing these documents and informed so to Respondent and documents would have been provided if Respondent did not request sudden and "never mentioned before" extra $5,000 monthly payment.
  Second, these documents were never asked upon signing the Agreement, nor in May when Respondents informed Claimant that the bank was ready to issue and requested payment for the bank and VISA/MC.
  Third, according to the agreement, any breach of contract must be notified to correct within 30 days.   However, Respondent suddenly issued cancellation notice. Claimant believes it was not because of the documents but because Respondent wanted to cancel the Agreement as Respondent had recognized Respondent could not issue JNC CARD as agreed.

5.  After payment of $29,400 on May 2nd, Respondent replied that JNC Card would be issued in 6 to 8 weeks, which was within June.   Claimant started to contract with Advertisement Company and finally made tremendous amount of down payment, AFTER Respondent confirmed ALL except issuance of Amex are "ALRIGHT AND APPROVED" (Exhibit 6). The advertisement on Nikkei national newspaper was ordered to be placed in the middle of August, but, due

to Respondent's failure of issuance of JNC CARD, Claimant had to cancel this advertisement.

Claimant assures that Claimant will honor any decision of the arbitrator, however, Claimant shall reserve the right to go to the Court and to further demand this amount along with other damages and actual cost spent, IN CASE Respondent did not accept the arbitration or did not honor arbitrator's decision and did not return the funds to Respondent as awarded.

(5) Exhibits

Exhibit 1:  The Agreement of Jan 29, 2007
            (signed by Respondent and signed by both parties)
Exhibit 2:  Proof of Payment ($74,250 in total)
Exhibit 3:  Notice of Breach Correction of Aug 30, 2007
Exhibit 4:  Cancellation Notice of Aug 31, 2007
Exhibit 5:  Bill for First Bank of Delaware Payment of Apr 23, 2007
Exhibit 6:  Email advising "All ARE APPOROVED" of July 19, 2007
Exhibit 7:  Claimant's bank account information for the funds to be returned

# Exhibit D

 International Centre
for Dispute Resolution

## INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION
International Arbitration Tribunal

In the Matter of the Arbitration between:

Re: 50 181 T 00353 07
JNC Inc.
vs
Digital World Card Inc.

### AWARD OF ARBITRATOR

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the Arbitration Agreement entered into between the above-named Parties and dated January 29, 2007, and having been duly sworn, and having duly heard the proofs and allegations of the Claimant, JNC Inc., and the Respondent, Digital World Card, Inc. having failed to appear after due notice by telephone and by mail in accordance with the Rules of the American Arbitration Association, do hereby AWARD, as follows:

1.  Within thirty (30) days from the date of transmittal of this Award to the Parties, the Respondent, Digital World Card Inc. (hereinafter referred to as the "Respondent") shall pay to the Claimant, JNC Inc. (hereinafter referred to as the "Claimant"), the sum of $74,250.00, plus simple interest thereon at the rate of nine (9%) percent per annum computed from May 2, 2007 to the date of payment in full thereof by the Respondent.

2.  The administrative fees and expenses of the ICDR totaling $1,500.00 shall be borne entirely by the Respondent, and the compensation and expenses of the Arbitrator totaling $950.00 shall be borne entirely by the Respondent. Therefore, the Respondent shall reimburse and pay to the Claimant in the sum of $2,450.00, representing that portion of the administrative fees and expenses of the ICDR and that portion of the compensation and expenses of the Arbitrator previously paid by the Claimant.

3.  This award is in full settlement and disposition of all claims submitted to this Arbitration.

*A Division of the American Arbitration Association*

I hereby certify that, for the purposes of Article 1 of the New York Convention of 1958, on the Recognition and Enforcement of Foreign Arbitral Awards, this Final Award was made in New York, New York.

_____                    _____
        Date                                  Michael Wexelbaum, Arbitrator


State of New York       )
                        ) SS:
County of New York      )


I, Michael Wexelbaum, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

_____                    _____
        Date                                        Michael Wexelbaum